# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

DALILLAH SHORT; KENICHA JOHNSON; NICOLE BOYKINS; individually and on behalf of a class of all others similarly situated,

    Plaintiffs,

    v.

MISSISSIPPI DELTA COMMUNITY COLLEGE (MDCC); DR. TYRONE JACKSON, President of MDCC, in his official and individual capacities; DERRICK FIELDS, MDCC Dean of Student Services, in his official and individual capacities; DR. STEVEN JONES, MDCC Vice President of Administrative and Student Services, in his official and individual capacities; PATRICIA KELLY, MDCC Dean of Health Science, in her individual capacity; TRACI BECKHAM, MDCC Director of Nursing and MDCC Associate Degree Nursing (ADN) Chair, in her individual capacity,

    Defendants.

Civil Action No. 4:22CV95-DMB-DAS

**JURY TRIAL DEMANDED**

# CLASS ACTION COMPLAINT

i

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1
JURISDICTION AND VENUE .............................................................................................2
PARTIES .................................................................................................................................2
GENERAL ALLEGATIONS ..................................................................................................5
CLASS ACTION ALLEGATIONS ......................................................................................12
CAUSE OF ACTION ............................................................................................................14
PRAYER FOR RELIEF ........................................................................................................15

## INTRODUCTION

1. This Complaint is brought by Dalillah Short, Kenicha Johnson, and Nicole Boykins, on behalf of themselves and a class of similarly situated individuals, because their constitutional rights as nursing students were and are being violated by Mississippi Delta Community College's (MDCC or the College) policy of automatically expelling Health Sciences Division students for testing positive on a hair follicle drug test and depriving them of a hearing or any other meaningfully opportunity to respond to and refute the conclusion that they are drug users and therefore should be expelled from nursing school. False positive results do occur on hair follicle tests. The failure of MDCC to provide Health Sciences Division students, including the plaintiffs, with a hearing where they can make the case that they are not drug users and should be allowed to remain in school is a violation of their rights under the Fourteenth Amendment to the United States Constitution.

2. MDCC is located in Sunflower County, Mississippi, in the Mississippi Delta. MDCC's student body is approximately 60 to 70 percent African American, and mostly women. Black women are the largest demographic, comprising approximately 40 to 50 percent of the student body. The second-largest demographic is Black men, who make up approximately 20 to 30 percent of all MDCC students. Approximately 80 to 90 percent of students receive grants or loans. Between 2016 and 2020 in Sunflower County, 74% of residents were African American; the 12-month per capita income was less than $17,000; the median household income was approximately $30,000; and fewer than 17% of all residents over 25-years-old held a bachelor's degree or higher.

**JURISDICTION AND VENUE**

3.     This lawsuit is brought pursuant to 42 U.S.C. § 1983 (civil action for deprivation of federal rights) and the Fourteenth Amendment to the United States Constitution. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The supplemental jurisdiction of this Court to hear claims arising under state law is invoked pursuant to 28 U.S.C. § 1367.

4.     This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b) as the relevant events giving rise to Plaintiffs' claims occurred in Sunflower County, Mississippi, which is in the Northern District of Mississippi.

**PARTIES**

*Plaintiffs*

6.     Plaintiff Dalillah Short, LPN II, is a resident of Mississippi. She is a 39-year-old Black American woman who began working in healthcare over a decade ago as a certified nursing assistant (CNA); in recent years, she became a licensed practical nurse (LPN). Ms. Short is a single mother of three children whose father passed away when the children were very young. Ms. Short was 38-years-old when MDCC expelled her, and she was working at a hospital and a nursing home as an LPN. Ms. Short currently works at a local nursing home. Before her expulsion, Ms. Short was a successful student in MDCC's Division of Health Sciences' Associate Degree Nursing program (ADN program). MDCC's ADN program is a two-year program that provides graduates with an Associate of Applied Science degree and eligibility to take the national exam for licensure

as a registered nurse (RN). She had been an honor student and was awarded scholarship and tuition assistance worth thousands of dollars, which she lost because of her expulsion. Ms. Short was dismissed at the end of her second semester; she would have graduated in May of 2022 and taken her exam to become a licensed RN shortly therafter.

7. Plaintiff Kenicha Johnson, LPN II, is a resident of Mississippi. She is a 36-year-old African American woman and a mother of two teenage daughters. She cares for her disabled father. At the time she was expelled by MDCC, she was a student in MDCC's Division of Health Sciences' ADN program. Ms. Johnson was working as a LPN and had cut back her hours to attend school. Ms. Johnson had been working in the healthcare field for over a decade, including for years as a CNA. She sought the more advanced nursing degree in order to become an RN and better support her daughters. At the time MDCC expelled her, Ms. Johnson had completed three full semesters of MDCC's nursing program and had only three weeks remaining in the fourth and final semester.

8. Plaintiff Nicole Boykins, CNA, is a 40-year-old African American woman who has worked in the field of healthcare as a certified nursing assistant for over a decade. She is a single mother of two children. Ms. Boykins and her daughter both enrolled at MDCC together in 2018. They earned their prerequisites and then applied to MDCC's Practical Nursing program (PN program)—their top choice. MDCC's PN program is a one-year program that moves graduates towards eligibliy to take the national exam for licensure as a practical nurse (LPN). They were accepted and began the program in August of 2021 with an expected graduation date of July 2022. It was a substantial financial hardship, but Ms. Boykins planned, saved, and worked second, third, and other shifts to support herself and her children so that her family could their reach their higher

education and professional certification goals. At the time MDCC expelled her, in the Spring of 2022, Ms. Boykins and her daughter were months away from completing the PN program.

## *Defendants*

9. Defendant Mississippi Delta Community College (MDCC or the College) is a public college of the State of Mississippi. Its Health Science Division programs include Associate Degree Nursing, Practical Nursing, Physical Therapist Assistant, Medical Laboratory Technology, Radiologic Technology, Health Care Assistant, Dental Hygiene Technology, and Phlebotomy.

10. Defendant Dr. Tyrone Jackson is sued in his official and individual capacities. He is the President of MDCC. Dr. Jackson was appointed as President of the College by the Mississippi Delta Community College Board of Trustees, and he is the final policymaker with respect to expulsion policies. Dr. Jackson is and was responsible for MDCC's expulsion policies, practices, and customs. He has implemented the unconstitutional policies described in this Complaint. At all times relevant Dr. Jackson is responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of MDCC staff, contractors, and other personnel, including any who were involved in the expulsions at issue in this case.

11. Defendant Derrick Fields is sued in his official and individual capacities. Mr. Fields is the current Dean of Student Services and, prior to a recent reorganization, worked as or with the Vice President of Student Services. In both positions, pursuant to written policy, he personally implemented and enforced the unconstitutional policies and procedures described in this Complaint, including by automatically expelling nursing student plaintiffs Ms. Short and Ms. Johnson.

12. Defendant Dr. Steven Jones is sued in his official and individual capacities. Mr. Jones is the Vice President of Administrative and Student Services at MDCC. Pursuant to written policy, he personally implemented and enforced the unconstitutional policies and procedures described in this Complaint, including by automatically expelling PN student plaintiff Ms. Boykins.

13. Defendant Patricia Kelly, MDCC Dean of Health Science, is sued in her individual capacity. Pursuant to written policy, she personally implemented and enforced the unconstitutional procedures described in this Complaint, including by automatically expelling nursing student plaintiffs Ms. Short and Ms. Johnson.

14. Defendant Traci Beckham, MDCC Director of Nursing and MDCC ADN Chair, is sued in her individual capacity. Pursuant to written policy, she personally implemented and enforced the unconstitutional procedures described in this Complaint, including by automatically expelling nursing student plaintiffs Ms. Short and Ms. Johnson.

**GENERAL ALLEGATIONS**

15. MDCC has and enforces, and did enforce against the plaintiffs, its policy regarding drug testing and automatic expulsion entitled, "Mississippi Delta Community College Division of Health Sciences Substance Use Policy" ("the Policy," "the drug screeing policy," or "August 2021 Version").[1] It is attached hereto as Exhibit A. It outlines a drug screening regimen that requires students submit to "random and/or group" drug screenings each semester, in addition to pre-

---

[1] The Policy was produced by MDCC to Plaintiffs on August 27, 2021, in response to Plaintiffs' Public Records Act request of August 9, 2021. Ex. A ("August 2021 Version," "the Policy," or "the drug screening policy"). Other iterations of the Policy exist. Plaintiffs know of two others, attached hereto as Exhibits B and C. At the time of filing, MDCC's website includes an iteration. Ex. B ("June 2022 Version"). When plaintiff Ms. Short was a new student, MDCC provided her with an iteration within an ADN Student Handbook. Ex. C ("August 2020 ADN Version").

admission, and "[a]ll students who are tested must be witnessed by an approved Official or a staff member of the collecting agency." Ex. A at 1. "If any drug screening is positive, the student is dismissed immediately from the program." *Id*.

16. Under the Policy, students are to be "immediately" dismissed from MDCC if they receive a positive result from "*[a]ny* drug screening"—even if wholly unrelated to schooling—without regard to who administered the test or how. *Id.* (emphasis added). The Policy provides absolutely no procedural safeguards for erroneous deprivation. According to MDCC, the Policy is "to the benefit of students and employees of Mississippi Delta Community College as well as the surrounding community." *Id*.

17. The Policy reads, in part:

> *If any drug screening is positive, the student is dismissed immediately from the program.* Any drug screening, whether it is done for employment purposes, law enforcement purposes or school purposes, that is positive during the period of time the student is enrolled in the Health Science program, the student will be dismissed immediately from the program. The student will be given an opportunity to meet with the Program Director and the Dean of Health Science.[2] The student may be considered for probationary readmission (ONE time only) following completion of a chemical dependency program approved by the Health Science Program at the student's expense. If probationary readmittance is granted, after care monitoring will be required for the duration of the course of study at the student's expense.
>
> Drug testing procedures will be carried out at the direction of the Vice President of Student Services and the laboratory personnel conducting the screening. Testing may be in the form of urine testing or hair sampling as deemed necessary by the Vice President of Student Services in consultation with the collecting agency. Lab results are submitted directly from the lab to the Vice President of Student Services. The Vice President of Student Services sends notification of drug testing results to the Dean of Health Science or Program Director.

Ex. A (emphasis added).

---

[2] The three attached versions of the Policy appear to contain small variations. As one example of a variation, Ms. Short's iteration (Ex. C, "August 2020 ADN Version") differs from the two others (Ex. A, "August 2021 Version" and Ex. B, "June 2022 Version") in that "ADN Chair" is substituted for "Program Director" in this sentence and in the last sentence of the Policy excerpted herein. As noted in this Complaint at ¶ 13, Defendant Traci Beckham is both the MDCC Director of Nursing and the MDCC ADN Chair.

18. On April 5, 2021, Dalilah Short was subjected to a random drug test by MDCC that was executed during one of her nursing classes. For this test, a sample of her hair was cut from her head.

19. On April 12, 2021, Ms. Short received a call from a staff member at a lab that MDCC contracts with to test its students throughout the year. This contractor told Ms. Short that her hair sample tested positive for cocaine. Ms. Short, who does not use cocaine, immediately began contacting a wide range of instructors, staff, and administrators—including Defendant Dr. Jackson—for help. In the days that followed, she received none.

20. Defendant Fields, who was then either the Vice President or Assistant to the Vice President of Student Services—and who is now Dean of Student Services—responded to Ms. Short that she may have tested positive for drug use because she had sex with a cocaine user, even if she had not used any drugs. Defendant Fields also told Ms. Short that she may have tested positive not because she used drugs but because another person may have put a drug in her drink—the implication being that Ms. Short may have been the victim of a crime, associated with rape, which by itself would have justified her automatic expulsion.

21. The Director of Nursing, Defendant Beckham, and the Dean of the Health Sciences Division, Defendant Kelly, advised that her dismissal from the nursing program for the positive drug test was automatic and that there were no exceptions. Defendant Fields told her there was no procedure by which the expulsion could be appealed.

22. In the meantime, Ms. Short went to The Greenville Clinic for a hair follicle drug test, which she paid for herself. It was negative for illegal drugs, including cocaine. She provided

the result to MDCC, and Defendant Fields emailed her that MDCC would not consider any test of any hair sample other than the original gathered.

23. Ms. Short paid to have her original sample re-analyzed by an MDCC-contracted lab. That re-analysis failed because, according to that lab, the sample was abnormally structured or damaged. Ms. Short emailed MDCC that this result was a discrepancy in the testing process that, under MDCC's drug screening policy, should have permitted MDCC to accept the negative hair follicle drug test done by The Greenville Clinic. Defendant Fields emailed her that there was no means to appeal and that her dismissal was final.

24. Ms. Short was never provided with constitutionally adequate notice, an opportunity to be heard, or a meaningful hearing that would give her an opportunity to refute and rebut the contention that she is a user of illegal drugs and therefore should not remain in nursing school.

25. Ms. Short suffered financial loss, experienced reputational damage in her profession, and she experienced prolonged mental anguish as a result of her expulsion.

26. On April 5, 2021, Kenicha Johnson was also subjected to a random drug test by MDCC, for which an MDCC contractor cut a sample of her hair from her head.

27. MDCC had previously required Ms. Johnson to submit to multiple previous drug screening tests, which she did when required, without incident. She always tested negative.

28. On April 12, 2021, Ms. Johnson received a call from a staff member at a lab that MDCC contracts with, who told her that her hair sample tested positive for cocaine. Ms. Johnson, who does not use cocaine, immediately began contacting MDCC staff and administrators—including Defendant Dr. Jackson—and a range of other officials, for help. In the days, weeks, and months that followed, she received none.

29. Defendant Fields told Ms. Johnson that that this happens every year, and that according to school policy she would be dismissed from the program. Defendant Beckham, Director of Nursing, read her the Policy during the meeting in which Defendant Beckham and Defendant Kelly, Dean of the Health Sciences Division, dismissed Ms. Johnson from the program.

30. In the meantime, Ms. Johnson went to The Family Medical Clinic for a hair follicle drug test and a urine drug test, which she paid for herself. Both were negative for illegal drugs, including cocaine. Her results came back from a lab called Omega Laboratories. Ms. Johnson provided the result to MDCC, and MDCC would not reconsider. Ms. Johnson paid to have her original sample re-analyzed by MDCC's contracted lab. That re-analysis was positive.

31. Ms. Johnson recently applied to Arkansas State University's School of Nursing. The Admission Committee denied her application because the required letter of good standing that MDCC sent stated that Ms. Johnson is not eligible for readmission at MDCC. On that basis, the Admission Committee determined that the good standing required "was not proven or provided."

32. Ms. Johnson was never provided with constitutionally adequate notice, an opportunity to be heard, or a meaningful hearing that would give her an opportunity to refute and rebut the contention that she is a user of illegal drugs and therefore should not remain in nursing school.

33. Ms. Johnson suffered financial loss, experienced reputational damage in her profession, and she experienced prolonged mental anguish as a result of her expulsion.

34. On March 22, 2022, Nicole Boykins was also subjected to a random drug test by MDCC, for which an MDCC contractor cut a sample of her hair from her head.

35. MDCC had required Ms. Boykins to submit to two previous drug screening tests, which she did when required, without incident. She always tested negative.

36. On April 4, 2022, Ms. Boykins received a call from MDCC's contracted lab. The employee told Ms. Boykins that her hair sample tested positive for cocaine. Ms. Boykins, who does not use cocaine, immediately reached out to Veronica Caradine, one of her instructors and Assistant Director of Nursing. Ms. Caradine told her that she could not come to class or clinicals effective immediately, on April 5, 2022.

37. Ms. Boykins called MDCC's contracted lab the same day, asking for a retest. They gave her a lab email address through which to request a reanalysis, which she did. In a return email, she was told where to mail a $150 money order to pay for it, and that if there was not enough of the hair sample specimen left to be retested, a refund would be processed. She sent the fee immediately and on an expedited basis, and she received confirmation of its delivery.

38. In May 2022, a lab notified Ms. Boykins that they had, weeks before, initiated the procedure to perform the requested retest of her specimen. However, on May 18, 2022, the lab contacted Ms. Boykins to inform her that at some point during a specimen transit portion of the retesting procedure, her specimen had been lost. Therefore, MDCC's contractors could not and did not complete the retest of her original hair sample.

39. On May 19, 2022, Ms. Boykins emailed and called Defendant Fields—now Dean of Student Services—for help. She was directed to Defendant Jones—the Vice President of Administrative and Student Services. On a phone call, Defendant Jones told Ms. Boykins that he would contact MDCC's contracted lab and get back to her with an update. On May 25, 2022, Ms. Boykins requested an update from Mr. Jones by email.

40. On May 24, 2022, Ms. Boykins went to Aurora Health Center for a urine drug test, which she paid for herself. On May 26, Ms. Boykins received the results, which were negative for illegal drugs, including cocaine.

41. On May 30, Ms. Boykins went to Wisconsin Drug Testing for a hair follicle test, which she paid for herself. On June 3, 2022, Ms. Boykins received the results, which were negative for illegal drugs, including cocaine. Her results came back from a lab called Omega Laboratories.

42. Ms. Boykins continued contacting MDCC staff and administrators for help in the weeks that followed, including Counseling and Disability Support Services Coordinator Nakeshia Fipps, and she received none.

43. On June 1, 2022, Dr. Jones informed Ms. Boykins by phone that MDCC's contracted lab told him that her original specimen was lost in transit. Ms. Boykins informed Dr. Jones that she possessed an email from the lab dated May 15, 2022, which confirmed her specimen had arrived at the lab. Dr. Jones requested Ms. Boykins forward that email to him, and she later did. During the same phone call, Dr. Jones told Ms. Boykins that he believed he should stick to MDCC's policy: Her only option was to complete a drug rehabilitation program to become eligible to resume the program in Spring of 2023.

44. Ms. Boykins was never provided with constitutionally adequate notice, an opportunity to be heard, or a meaningful hearing that would give her an opportunity to refute and rebut the contention that she is a user of illegal drugs and therefore should not remain in nursing school.

45. Ms. Boykins suffered financial loss, experienced reputational damage in her profession, and she is and has been experiencing mental anguish as a result of her expulsion.

46. MDCC nursing students have a liberty and property interest in remaining in school, completing their education, and obtaining their degree.

47. On information and belief, a lab called Omega Laboratories was involved in testing for MDCC the hair follicle specimens of Ms. Short, Ms. Johnson, and Ms. Boykins.

48. Without a meaningful hearing, MDCC puts students at an unnecessary risk of being terminated due to a false positive test result even though they do not use illegal drugs. A meaningful hearing would give them an opportunity to refute and rebut the contention that they are users of illegal drugs and therefore should not remain in nursing school.

## CLASS ACTION ALLEGATIONS

49. The named Plaintiffs have suffered constitutional violations as a direct result of MDCC's drug screening and expulsion policy, which is enforced pervasively and has the force of law.

50. The named Plaintiffs seek to bring this action on their own behalf and on behalf of a class of similarly situated individuals pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

51. All named Plaintiffs are Class Representative Plaintiffs, and they seek to represent the following Class in order to obtain declaratory and injunctive relief with respect to Defendants' Policy: All past, present, and future students of MDCC's Division of Health Sciences who have been or may be expelled due to a positive drug test absent constitutionally adequate procedural safeguards.

52. The Class meets all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure.

53. The Class is so numerous as to render joinder impracticable. On information and belief, students are expelled every year due to positive drug tests from MDCC's Health Sciences Division absent constitutionally adequate procedural safeguards, and many more will be absent injunctive relief.

54. The activities described herein, and the resulting violations of individuals' constitutional rights, have occurred, and will continue to occur, on a routine basis and for the foreseeable future absent injunctive relief.

55. Joinder is impracticable because of the large number of people in the class. Also, many members of the Class are not aware that MDCC's Policy violates their constitutional rights and that they have the right to seek redress in court. Many members of the Class are without the means to retain an attorney to represent them in a civil rights lawsuit. There is no appropriate avenue for protection of the Class members' constitutional rights other than a class action.

56. The following common question of law or fact is central to the claims of the Class: Whether MDCC's policy, custom, and practice of expelling Health Sciences Division students for positive drug tests absent adequate procedural safeguards violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

57. The legal theories under which the Class Representative Plaintiffs seek declaratory and injunctive relief are the same or similar to those on which all members of the Class will rely, and the harms suffered by the Class Representative Plaintiffs are typical of the harms suffered by members of the Class.

58. The Class Representative Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interest with members of the Plaintiff Class, and will fairly and adequately protect the interests of the Class.

59. The Class Representative Plaintiffs continue to be employed, seek employment in, and/or pursue degrees and certifications in the field of nursing and healthcare. So long as MDCC continues to implement the policies, practices, and customs described herein, the Class Representative Plaintiffs will remain at a disadvantage because they were expelled from MDCC

in violation of their constitutional rights, and they continue to suffer personal and professional reputational harm as a result.

60. The Class Representative Plaintiffs are represented by the Mississippi Center for Justice. Counsel for the Plaintiffs have the resources, expertise, and experience to prosecute this action. Counsel for the Plaintiffs know of no conflicts among members of the Class or between the attorneys and members of the Class.

61. The Class should be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the class, thereby making class-wide declaratory and injunctive relief appropriate.

## CAUSE OF ACTION

**(Claims of Class Representative Plaintiffs and Class Members Pursuant to 42 U.S.C. § 1983 Against Defendants for Violations of the Due Process Clause of the Fourteenth Amendment)**

62. Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

63. The policies and actions of the Defendants as set forth in this complaint—including the automatic expulsion of MDCC Division of Health Sciences' students, such as the named Plaintiffs, for a positive drug test without adequate procedural safeguards that provide sufficient notice, an opportunity to be heard, and a meaningful hearing and opportunity to refute and rebut the contention that they are users of illegal drugs and therefore should not remain in nursing school—violate the due process clause of the Fourteenth Amendment to the Unites States Constitution.

14

64. Each of the Defendants has acted under color of law and in violation of, and with deliberate indifference to, the Fourteenth Amendment rights of the Class Representative Plaintiffs and other members of the Class.

65. These constitutional violations are ongoing and, absent injunctive relief, will continue to be inflicted, now and in the immediate future, upon the Class Representative Plaintiffs and other members of the Class.

66. The Class Representative Plaintiffs and other members of the Class have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from continuing to implement their unconstitutional policies, customs, and practices related to the automatic expulsion of Health Sciences Division Students for positive drug screening tests absent adequate procedural due process protections.

## PRAYER FOR RELIEF

**WHEREFORE,** the Class Representative Plaintiff and other members of the class they seek to represent pray that the Court will:

A. Issue an order certifying as a class pursuant to Rule 23 (b)(2) of the Federal Rules of Civil Procedure the Class, with the Class Representative Plaintiffs as representatives.

B. Issue a declaratory judgment that:

> Defendants' policy, custom, and/or practice regarding its automatic expulsion of Health Sciences Division Students absent adequate procedural due process protections violates the Fourteenth Amendment to the United States Constitution.

C. Issue an order:

   i. Enjoining Defendants from continuing their unconstitutional policy, custom, and practice regarding automatic expulsion of Health Sciences Division Students for positive drug tests absent

      constitutionally adequate procedural due process protections;

   ii.  Requiring that MDCC, for named Plaintiffs and all class members:

     1. Make them eligible for immediate readmission without requiring them to repeat or re-pay for any course work, and without requiring that they complete a chemical dependency program and submit to after-care monitoring;

     2. Deducted from their tuition any secured scholarship and grant funding which they lost because of the automatic expulsion;

     3. Permanently purge their academic record of any indication of their expulsion; reinstate good standing if lost.

   iii.  Requiring that MDCC:

     1. Reinstate the named Plaintiffs as nursing students in the Health Sciences Division of MDCC, without requiring them to repeat or re-pay for any course work.

D. Award the named Plaintiffs damages against the Defendants sued in their individual capacity in an amount to be determined at trial.

E. Award all Plaintiffs, including the members of the Class, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

F. Award all Plaintiffs, including the members of the Class, costs of suit pursuant to 42 U.S.C. §§ 1920 and 1988; and

G. Award such other and further relief as this Court may deem appropriate and equitable.

| | |
|---|---|
| Dated:<br><br>June 27, 2022 | Respectfully Submitted,<br><br>/s/Paloma Wu<br>Paloma Wu (Miss. Bar No. 105464)<br>Robert B. McDuff (Miss. Bar No. 2532)<br>MISSISSIPPI CENTER FOR JUSTICE<br>210 E. Capitol Street<br>Suite 1800 (39201)<br>P. O. Box 1023<br>Jackson, MS  39215<br>(601) 709-0857<br>pwu@mscenterforjustice.org<br>rmcduff@mscenterforjustice.org<br><br>*Attorneys for Plaintiffs* |